# United States Court of Appeals for the Federal Circuit

RECEIVED

FEB 2 3 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

2010-1080, -1210

FILED

FEB 2 3 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

THE WESTERN UNION COMPANY,

Plaintiff-Appellee,

v.

MONEYGRAM PAYMENT SYSTEMS, INC.,

Defendant-Appellant.

# Judgment

ON APPEAL from the      UNITED STATES DISTRICT COURT
                        FOR THE WESTERN DISTRICT OF TEXAS

in CASE NO(S).          07-CV-0372

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

## **REVERSED**

ENTERED BY ORDER OF THE COURT

DATED   DEC – 7 2010

Jan Horbaly, Clerk

Issued as Mandate:  FEB 1 5 2011
COSTS:
Printing.............................. $ 1,026.80
    Total............................ $ 1,026.80

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _____ Date: 2/15/11

# United States Court of Appeals for the Federal Circuit

---

**THE WESTERN UNION COMPANY,**
*Plaintiff-Appellee,*

**v.**

**MONEYGRAM PAYMENT SYSTEMS, INC.,**
*Defendant-Appellant.*

---

2010-1080, -1210

---

Appeal from the United States District Court for the Western District of Texas in Case No. 07-CV-0372, Judge Sam Sparks.

---

Decided: December 7, 2010

---

DAVID E. SIPIORA, Townsend and Townsend and Crew LLP, of Denver, Colorado, argued for plaintiff-appellee. With him on the brief were IAN L. SAFFER, AMANDA L. SWAIM and KEVIN M. BELL.

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for defendant-appellant. With him on the brief were JOSEPH J. MUELLER, MEGAN BARBERO and SYDENHAM B. ALEXANDER, III ; and William G. McElwain, of Washington, DC. Of counsel on the brief were MARTIN R. LUECK

and EMMETT J. MCMAHON, Robins, Kaplan, Miller & Ciresi LLP, of Minneapolis, Minnesota.

_____

Before RADER, *Chief Judge*, and LOURIE and PROST, *Circuit Judges*.

LOURIE, *Circuit Judge*.

MoneyGram Payment Systems, Inc. ("MoneyGram") appeals from the final judgment of the United States District Court for the Western District of Texas in favor of the Western Union Company ("Western Union"). A jury found infringement of certain claims of U.S. Patents 6,488,203 (the "'203 patent"); 6,502,747 (the "'747 patent"); 6,761,309 (the "'309 patent"); and 7,070,094 (the "'094 patent"), and found those patents not invalid for obviousness. The district court denied MoneyGram's renewed motion for judgment as a matter of law ("JMOL") on infringement and invalidity of the asserted patents. *Western Union Co. v. MoneyGram Int'l, Inc.*, No. 1:07-cv-00372, Dkt. No. 429 (W.D. Tex. Nov. 17, 2009) (*"JMOL Opinion"*). Because we find that the asserted claims in the patents in suit would have been obvious to a person of ordinary skill in the art at the time of filing, we reverse.

## BACKGROUND

Western Union owns the '203, '747, '309, and '094 patents directed to a system for performing money transfers. The '203, '747, and '309 patents (collectively, the "send patents") specifically relate to methods of sending money through a financial services institution ("FSI"). The '094 patent claims methods for receiving transferred money. The patented system relates to money transfer services such as those offered by Western Union through retail locations where a customer may identify a recipient and tender an amount to be delivered to the recipient.

The money transfer service collects the amount from the retail location and completes the transaction for the customer.    Some of the traditional money transfer systems required money senders to fill out forms with transaction information such as recipient information and the amount of money to be transferred.    The '203 patent claims a method of performing a formless money transfer using an electronic transaction fulfillment device ("ETFD").    Figure 1 from the '203 patent depicts an embodiment of the patented system.



**Figure 1 of the '203 patent**

In the patented system, a customer has telephone access to the customer service representative ("CSR") at the

financial institution, who obtains details of the transfer and "stages" the money transfer for the customer, storing the transaction details on a host computer (18). The customer is later able to complete the transaction at a retail location where an agent is able to retrieve the transaction from the computer (18) through an ETFD (22) and accept the required amount of money from the customer. Claim 1 is representative of the patented invention:

> 1. A method of performing a money transfer send transaction, the method comprising:
>
> > providing a sender direct access to an employee of a financial services institution in order to receive transaction details from the sender;
> >
> > storing, on a data base, the transaction details provided by the sender, wherein the transaction details include a desired amount of money to be sent by the sender to a recipient;
> >
> > *establishing a code* that corresponds to the transaction details stored on the data base, wherein the *code is established for use by the sender during the send transaction*;
> >
> > *storing the code on the data base* such that the code is useable to identify the send transaction on the data base;

> *entering the code into an electronic transaction fulfillment device* in communication with the data base to retrieve the transaction details from the data base after the step of storing the code on the data base; and

> determining a collect amount, to be collected from the sender, based on the transaction details;

> wherein the code is not provided by or to the recipient for use by the recipient during the send transaction.

'203 patent, claim 1 (emphases added).

Claim 12 is dependent on claim 1 and adds the limitation that an employee of the money transfer business provides the transaction identifying code. Claim 16, which is also dependent on claim 1, adds the limitation of collecting the money from the sender, notifying the database of the collection, and recording the transaction as complete. The '203 patent was filed on October 26, 1999 and issued on December 3, 2002. The '747 patent, also filed in 1999, and the '309 patent, filed in 2004, are both continuations of the '203 patent. The '309 patent claims are similar and substantially identical in scope to the '203 patent claims. The '747 patent primarily adds the use of internet-based communications, using an internet communications protocol ("the TCP/IP protocol"), to the money transfer system and claims the use of a "first computer" instead of "the data base" used in the '203 patent. Claim 20 is illustrative:

20. A method of performing a money transfer send transaction through a financial services institution, the method comprising:

receiving transaction details on a first computer of the financial services institution, wherein the transaction details are provided by a sender and include a desired amount of money to be sent by the sender to a recipient;

storing the transaction details on the first computer;

establishing a code that corresponds to the transaction details, wherein the code is established for use by the sender during the send transaction;

storing the code on the *first computer* such that the code is useable to identify the send transaction;

receiving the code at the first computer from an electronic transaction fulfillment device in communication with the first computer after the step of storing the code on the first computer;

*validating the code received* from the transaction fulfillment device by comparing the code received from the transaction

        fulfillment device with the code stored on
the first computer; and

        transmitting a collect amount, to be col-
lected from the sender, from the first com-
puter to the transaction fulfillment device
if the code received from the transaction
fulfillment device is valid;

        wherein at least a portion of the method is
performed *using TCP/IP*, and wherein the
code is not provided by or to the recipient
for use by the recipient during the send
transaction.

'747 patent, claim 20 (emphases added). During prosecu-
tion of the '747 and '309 patents, the inventors filed a
terminal disclaimer limiting the terms of those patents to
that of the '203 patent in response to double patenting
rejections by the USPTO.

        Like the patented invention, a prior art system owned
by Orlandi Valuta, another money transfer service com-
pany, also employed technology that did not require
customers to fill out forms to transfer money. Below is a
figure from Orlandi Valuta's literature on its "Red Phone"
system:



Orlandi Valuta's Red Phone technology, used as early as 1997, required a customer to use a telephone to initiate a transaction with an Orlandi Valuta CSR. The telephone typically used by the customer was a red colored telephone available at the retail location that automatically connected to an Orlandi Valuta CSR in Los Angeles, California. The CSR would enter information received from the customer into the Orlandi Valuta computer system, whereupon the system would fax an invoice to the retail location of the customer or to the one that the customer had requested. The Orlandi Valuta customer would not receive a confirmation number for the transaction, but was simply required to wait at the retail loca-

tion.  Upon receipt of the fax, an agent at the retail loca-
tion would call out the name of the customer, who could
then tender the required amount to that agent.  Western
Union acquired Orlandi Valuta in 1997, shortly after it
had developed the formless transfer system.

The patents in suit claim to solve shortcomings of the
Orlandi Valuta system.  The inventors, Earney Souten-
burg and Dean Seifert, both employees of Western Union,
were also responsible for Orlandi Valuta's technology
group following Western Union's acquisition of that
company.  Prior to developing the patented system, later
commercialized as Western Union's "Yellow Phone"
system, the inventors evaluated Orlandi Valuta's formless
money transfer system to determine if Western Union
could utilize it on a larger scale to support its higher
volumes of money transfers.  The inventors claim that the
Orlandi Valuta system was not a viable formless option
for Western Union.

MoneyGram, also a money transfer service company
and a direct competitor of Western Union, developed and
deployed its "FormFree" money transfer system in 2000.
Like the patented system, the MoneyGram system pro-
vided the customer with a confirmation number, which
when provided by the customer to a retail agent allowed
for completion of the previously staged transaction.  This
confirmation number was also stored in a Confirmation
File database along with other information, such as the
transfer amount, of the staged transaction.  In September
2003, when MoneyGram learned of the patents in suit, it
developed a work-around to avoid infringement of those
patent claims.  The redesigned system no longer stored
the desired amount to be sent in the Confirmation File
database for pending transactions.  Instead, the customer
was required to provide that information again to the
agent at the retail location where the customer funded

and completed the transaction. MoneyGram obtained a formal noninfringement opinion from outside counsel on its redesigned system with regard to Western Union's patents.

In May 2007, Western Union filed this lawsuit in the United States District Court for the Western District of Texas, ultimately asserting infringement of claims 1, 12, 16, and 21 of the '203 patent; claim 20 of the '747 patent; claims 12 and 22 of the '309 patent; and claim 2 of the '094 patent. In December 2008, the district court construed claims of all four patents at issue. *Western Union Co. v. MoneyGram Int'l, Inc.*, No. 1:07-cv-00372, 2008 WL 5731946 (W.D. Tex. Nov. 6, 2008). In August 2009, the district court granted summary judgment that Money-Gram's design-around system did not infringe the asserted claim of the '094 patent. *Western Union Co. v. MoneyGram Int'l., Inc.*, No. 1:07-cv-00372, Dkt. No. 353 (W.D. Tex. Aug. 21, 2009).

The case was tried to a jury in September 2009. During trial, Western Union withdrew its claim of infringement of the '309 patent and claim 21 of the '203 patent as to MoneyGram's redesigned system. Following trial, the jury found that MoneyGram's redesigned system infringed claims 1, 12, and 16 of the '203 patent and claim 20 of the '747 patent under the doctrine of equivalents. It found that MoneyGram's pre-design-around system, however, literally infringed the same claims as well as other claims that Western Union had asserted only against the earlier MoneyGram system: claim 21 of the '203 patent and claims 12 and 22 of the '309 patent. On claim 2 of the '094 patent, also asserted only against the earlier system, the jury found infringement under the doctrine of equivalents. The jury rejected MoneyGram's argument that the asserted patent claims were obvious in light of the Orlandi Valuta prior art system. The jury

awarded Western Union reasonable royalty damages in
the amount of $16,529,501.81.

Following trial, MoneyGram renewed its JMOL mo-
tion on obviousness of the asserted patent claims based on
the Orlandi Valuta system, and on noninfringement of the
asserted patent claims. Western Union renewed its JMOL
motion on literal infringement of the '747 patent. The
court denied all JMOL motions. In deciding Money-
Gram's JMOL motion on obviousness, the court found
that MoneyGram had waived its argument on the issue.
*JMOL Op.*, slip op. at 31. Nevertheless, the court pro-
ceeded to evaluate MoneyGram's motion on its merits and
decided that the jury had a legally sufficient evidentiary
basis upon which it could conclude that the asserted
claims were not obvious. *Id.* at 32. Specifically, regarding
the Orlandi Valuta prior art system, the court found that
it did not employ an ETFD terminal at the retail location
and did not use a code. *Id.* at 31-32. The court concluded
that it would not have been obvious for a person of ordi-
nary skill in the art to combine these two elements with
the existing Orlandi Valuta system. *Id.* Moreover, it held
that secondary considerations such as commercial success
and investments made by both parties in designing sys-
tems better than the Orlandi Valuta system weighed
against a finding of obviousness. *Id.* Thus, the district
court denied MoneyGram's JMOL motion. Lastly, the
court granted a permanent injunction against Money-
Gram. *Id.* at 60. MoneyGram now appeals the court's
rulings on claim construction, infringement, and invalid-
ity of the '203, '747, and '309 patents.[1] We have jurisdic-
tion pursuant to 28 U.S.C. § 1295(a)(1).

---

[1]   Western Union cross-appealed the court's denial
of its JMOL motion on literal infringement of the '747
patent, which we dismissed as an improper cross-appeal.

## DISCUSSION

### Obviousness

We begin with the district court's denial of Money-Gram's JMOL motion on obviousness. We review the denial of a JMOL motion *de novo*, applying law from the regional circuit, in this case, the Fifth Circuit. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005). Under Fifth Circuit law, a motion for judgment as a matter of law "should be granted by the trial court if, after considering all the evidence in the light [favorable to] and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997).

At the outset, Western Union argues that Money-Gram has waived its right to appeal several issues including obviousness of the asserted patent claims based on the Orlandi Valuta system in combination with a keypad. It argues that the district court properly found this argument waived below because MoneyGram failed to specifically raise obviousness based on a keypad device in its Rule 50(a) motion and that omission ran afoul of the purpose of Rule 50. Therefore, Western Union contends, MoneyGram cannot attempt to incorporate new prior art arguments on appeal.

We disagree and decide that the district court erred in concluding that MoneyGram had waived its obviousness argument specifically as it related to Orlandi Valuta. Rule 50(a) requires that a motion for judgment as a

*Western Union Co. v. MoneyGram Payment Sys., Inc.*, No. 2010-1080, Dkt. No. 54 (Fed. Cir. May 3, 2010).

matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). We have held that even a cursory motion suffices to preserve an issue on JMOL so long as it "serves the purposes of Rule 50(a), *i.e.,* to alert the court to the party's legal position and to put the opposing party on notice of the moving party's position as to the insufficiency of the evidence." *Blackboard, Inc. v. Desire2Learn, Inc.,* 574 F.3d 1371, 1379–80 (Fed. Cir. 2009). Fifth Circuit law, applicable here, also construes the rule liberally, excusing "technical noncompliance" when the purposes of the rule are satisfied. *Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 288-89 (5th Cir. 2007) (citation omitted). Applying that liberal standard, we find no waiver here. MoneyGram argued in its Rule 50(a) motion that it was entitled to JMOL on obviousness on all asserted claims of all asserted patents, specifically listing Orlandi Valuta as prior art that rendered the claims obvious. We agree with MoneyGram that those statements were sufficient to preserve MoneyGram's obviousness arguments as to Orlandi Valuta.

On the merits, MoneyGram argues that the claimed invention simply takes a known prior art system and adds obvious elements, such as the use of an off-the-shelf keypad to access transaction information. It contends that the patent specification itself concedes the fact that the core concept of the claimed invention, namely, the idea of providing a customer with direct access to a CSR who can store the customer's transaction details in the FSI's database, was well-known in the prior art. According to MoneyGram, the patented invention simply replaced the fax machine in the Orlandi Valuta system with an off-the-shelf keypad—a well-known device in the art. MoneyGram further argues that the district court incorrectly concluded that the Orlandi Valuta system did not

use a code even though there was ample evidence that such a code existed in that system by the name "clave," and users could use the clave to obtain information about their money transfers.   Regardless whether Orlandi Valuta taught that limitation, MoneyGram argues, adding a numerical code to a system that processes financial transactions would have simply been common sense to a person of skill in the art.  As for the '747 patent, which primarily added the use of internet-based communications to the '203 patent, MoneyGram argues that such an improvement would have been obvious under this court's precedent.   On secondary considerations relied upon by the district court, MoneyGram contends that they have no relation to the claimed invention.   Thus, MoneyGram contends that it established, by clear and convincing evidence at trial, that the asserted claims were obvious. It further notes that in response to its case on obviousness, Western Union did not even offer a rebuttal before the jury.   Therefore, MoneyGram argues, there is no evidence on the record to support the jury's underlying fact findings or its ultimate conclusion of nonobviousness.

Western Union argues in response that the Orlandi Valuta system may share some similarities with the patented invention, but it does not teach the core concepts claimed by its patents.  Western Union argues that the Orlandi Valuta system lacks at least three critical elements: (1) the "code" that is established for use by the sender during the send transaction; (2) an ETFD; and (3) the use of the Internet.  Regarding the code, Western Union argues, the jury heard testimony that the clave in the Orlandi Valuta system was not given to the customer until after the transaction had been completed, and that was sufficient evidence for the jury to find that limitation missing from the prior art. Likewise, it argues, the ETFD claimed is one used for completing the money transfer

transaction, and no evidence presented at trial established that the fax machine in the Orlandi Valuta system could provide similar transaction fulfillment functionality. According to Western Union, the keypads known in the prior art were not the same as an ETFD, and MoneyGram presented no evidence that such a keypad could be used to retrieve transaction details from a database, as claimed in the patents. Western Union further argues that to the extent these elements were well-known in the prior art, the jury's verdict of nonobviousness is easily supported by the lack of evidence of any motivation for one skilled in the art to have combined these elements with the Orlandi Valuta system. It contends, for example, that its own witness testified that extensive coding work was required to incorporate an ETFD into the commercial embodiment of the asserted patents. Lastly, Western Union argues, evidence of secondary considerations, such as the commercial success of its Yellow Phone system, cannot be ignored in evaluating the jury's finding of nonobviousness.

We agree with MoneyGram that in light of the Orlandi Valuta system, Western Union's asserted claims would have been obvious as a matter of law. Obviousness is a question of law based on underlying findings of fact. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). We review the jury's determination of underlying fact for substantial evidence, but we review the ultimate conclusion of obviousness *de novo*. *Boston Sci. Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 990 (Fed. Cir. 2009); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1324 (Fed. Cir. 2008). The underlying factual inquiries include (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *Graham v.*

*John Deere Co.*, 383 U.S. 1, 17-18 (1966). Here the level of skill of one of ordinary skill in the art and the scope of the claims of the patents in suit are not at issue. The parties' disputes revolve around whether the prior art taught three specific elements of the claimed inventions, whether there was a motivation to combine these elements with the prior art system, and whether secondary considerations support a finding of nonobviousness. We address each in turn.

### A. Combining an ETFD and the Use of the Internet with the Orlandi Valuta System

Western Union argues that the claimed ETFD is more than a simple keypad and includes functionality that cannot be achieved by simply exchanging the fax machine in the Orlandi Valuta system for a keypad. It argues that a keypad cannot communicate with a database to retrieve the transaction details. It also argues that there is no evidence in the record that a keypad equivalent to the ETFD was "well-known" in the prior art. Moreover, it argues, the combination would not have been obvious to a person of ordinary skill in the art.

We find each of these arguments unpersuasive. The patent specification itself describes the addition of "an electronic transaction fulfillment device, such as an electronic terminal having a keypad," '203 patent col.4 ll.8-10, and states that one embodiment is an FDX-400, available from Western Union, *id.* col.4 ll.21-23. It explains that FDX-400 comprises a numeric keypad, one or more function keys, and a display device. *Id.* col.4 ll.23-25. MoneyGram presented that evidence at trial. It presented evidence to show that the Orlandi Valuta system used an FDX-400 device, although at the CSR location, not at the retail location. It also presented testimony that various electronic keypad devices, such as

those used for credit card transaction processing, already existed at retail locations. We conclude that no reasonable jury should have found that MoneyGram failed to present sufficient evidence to demonstrate that electronic transaction devices, at least as sophisticated as the FDX-400, were commonplace in the art at the time of the invention.

We next address the question whether there was motivation to combine the prior art ETFD with the Orlandi Valuta system. An obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of a case. Indeed, the common sense of those skilled in the art demonstrates why some combinations would have been obvious where others would not. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007) ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."). Based on the Supreme Court's reasoning in *KSR*, we have subsequently held that applying computer and internet technology to replace older electronics has been commonplace in recent years. *See Muniauction Inc.*, 532 F.3d at 1327; *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007). In *Leapfrog*, we held that "[a]ccommodating a prior art mechanical device that accomplishes [the goal of teaching a child to read phonetically] to modern electronics would have been reasonably obvious to one of ordinary skill in designing children's learning devices." 485 F.3d at 1161. Our conclusion of obviousness was based in part on the reasoning that "[a]pplying modern electronics to older mechanical devices has been commonplace in recent years." *Id.* Similarly, in *Muniauction*, we concluded that conducting previously known methods of bidding through an Internet web browser was obvious because it amounted to no more than

applying the use of the Internet to existing electronic processes at a time when doing so was commonplace. 532 F.3d at 1327. We rejected the patentee's arguments that even where it was routinely done, such incorporation would have been beyond the ability of a person of ordinary skill in the art. *Id.*

Here too, we find the use of an electronic transaction device where the prior art employed a fax machine to be an unpatentable improvement at a time when such a transition was commonplace in the art. *See In re Mettke*, 570 F.3d 1356, 1360–61 (Fed. Cir. 2009) (finding it obvious to add Internet access to a prior art kiosk that included a fax-machine). We fail to see how it would have been difficult for a person of ordinary skill in the art to integrate an electronic transaction device that was available from Western Union itself into a well-known money transfer system that was also owned by Western Union at the time of the invention. Specific limitations that Western Union points to, such as using the ETFD to retrieve information from a database, are simply routine modifications that are a part of adapting a new technology to an existing system. Here, a person of ordinary skill in the art replacing a fax machine with an ETFD that could access a database would necessarily have known how to retrieve transaction details from the database.

Western Union further argues that it spent significant resources in developing its commercial embodiment of the patented invention and that the integration of the ETFD into a formless system was not a simple one that a skilled person could accomplish without any experimentation. Although we have held that a finding of obviousness may not be proper where the prior art merely provided a promising field for experimentation, *In re Kubin*, 561 F.3d at 1359-60, the testimony that Western Union relies upon here relates only to the effort that its engineers invested

in software implementation of its commercial system, not toward any inventive aspect claimed in the patents. Thus, we conclude that the combination of the ETFD with the Orlandi Valuta system would have been obvious to a person of ordinary skill in the art at the time of the invention.

For the same reasons, we are not persuaded by Western Union's arguments that the improvements recited in claim 20 of the '747 patent render the subject matter of the claim nonobvious. The claim primarily adds the use of internet-based communications, specifically the TCP/IP protocol to the invention patented in the '203 patent. We conclude that it would have been obvious for a person of ordinary skill in the art to use internet-based protocols in networking the systems used in the '203 patent. *See Papyrus Tech. Corp. v. N.Y. Stock Exch., LLC*, 653 F. Supp. 2d 402, 432 (S.D.N.Y. 2009) (finding that adding "a connectionless protocol (TCP/IP) that has been used in electronic communications, such as the Internet, since the 1980s" to other obvious elements of claim "adds nothing new to the field of endeavor"), *affirmed*, Case No. 2010-1166, 2010 WL 3934367 (Fed. Cir. Oct. 7, 2010).

### B. Use of a Code

Western Union argues, and the district court found, that the fact that the Orlandi Valuta system did not provide a code to the customer meant that that system did not disclose the use of a code for that specific functionality to a person of ordinary skill in the art. MoneyGram responds that the Orlandi Valuta system did in fact use a clave to identify transactions. Moreover, it contends, the basic idea of identifying transactions by codes is well-known to anyone who has ever purchased or reserved an item and received a confirmation number from a representative.

We agree with MoneyGram that the Orlandi Valuta system taught the use of a code that corresponds to a transaction in the system. At trial, MoneyGram established that the code printed on the invoice given to the Orlandi Valuta customer could be used to track the transaction. In light of this evidence, we conclude that it would have been common sense for a person of ordinary skill in the art to use a code generated at the staging phase and provided to the customer to be used at the retail location to look up transaction information in the manner claimed by the asserted patents. *See Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2010) (In *KSR*, "the Supreme Court instructed that factfinders may use common sense in addition to record evidence."). In *Perfect Web*, the patented technology involved a method of managing bulk e-mail that required repeating a series of steps until the desired quantity of e-mail had been sent. In affirming the district court's holding of obviousness, we reasoned that where there was a failure to reach the targeted number, common sense dictated that one should try again. *Id.* at 1330.

It is undisputed here that when a CSR entered a transaction into the Orlandi Valuta system, it generated a corresponding code and that that code was also printed on the invoice that the customer received at the retail location. Because, in that system, the transaction details were faxed to the retail location, the customer's name was used to validate and complete the transaction. Where the fax machine is replaced with an electronic transaction device that is capable of retrieving information from the host computer, it would be common sense for a person of skill to use the transaction code throughout the life of the transaction, including "use by the recipient during the send transaction." *See KSR*, 550 U.S. at 421 ("A person of ordinary skill is also a person of ordinary creativity.").

Consequently, other code-related limitations in the asserted claims, such as entering the code into the ETFD and validation of the code by the host computer, would have also been a matter of common sense to a person of ordinary skill in the art.

Western Union argues that MoneyGram did not separately prove that additional limitations of each of the asserted dependent claims were present in the prior art rendering each of those claim obvious as well. Western Union argues, for example, that dependent claim 12 of the '203 patent adds the limitation that an employee of the money transfer business provides the transaction identifying code to the customer. Western Union, however, does not explain why such an insignificant detail would not have been obvious to a person of skill in the art. We similarly decide that each of the other asserted claims of the '203 and '309 patents adds only trivial improvements that would have been a matter of common sense to one of ordinary skill in the art, and that no reasonable jury could find any of those claims to have been nonobvious. We therefore conclude, after considering all the evidence presented at trial in the light most favorable to Western Union, that each of the disputed elements of the asserted claims was present in the prior art, that the claimed combination represents no more than "the predictable use of prior art elements according to their established functions," *KSR*, 550 U.S. at 417, and as such, the claims would have been obvious as a matter of law.

### C. Secondary Considerations

MoneyGram argues that the district court's analysis of secondary considerations suffered from a fundamental flaw in that it failed to identify the nexus between the claimed inventions and the secondary considerations identified by Western Union. In relying on commercial

success, MoneyGram points out, the district court failed to
explain how the fact that Western Union had been trans-
ferring billions of dollars was in any way related to the
patented invention.  It contends that the district court
failed to consider Western Union's brand name recogni-
tion and marketing, or even the size of Western Union's
business prior to adopting the patented system, when it
used systems such as Orlandi Valuta.  It further argues
that in relying on the amounts that the parties had spent
on developing formless systems, the district court failed to
analyze whether those investments directly related to
conceiving the claimed inventions, such as an ETFD.
According to MoneyGram, absent those improper assump-
tions, there is no legally relevant evidence of secondary
considerations to support the nonobviousness of the
inventions of the asserted claims.

Western Union argues that to the extent the district
court's finding of nonobviousness was based on secondary
considerations, it was well-supported in the record.   It
contends that it presented evidence to the jury that the
Yellow Phone was commercially successful, transferring
billions of dollars and generating millions of dollars in
revenue each year.   Throughout its arguments on nonob-
viousness, Western Union places significant emphasis on
the fact that both parties evaluated the Orlandi Valuta
system that existed at the time of the invention and
decided to develop their own new and improved systems.

We agree with MoneyGram that the district court
erred in its analysis of secondary considerations of obvi-
ousness and in its heavy reliance on them in denying
MoenyGram's JMOL of obviousness.  We find the evi-
dence of secondary considerations irrelevant in supporting
the jury verdict of nonobviousness.  Our case law clearly
requires that the patentee must establish a nexus be-
tween the evidence of commercial success and the pat-

ented invention. *See In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (holding that the proponent must offer proof "that the sales were a direct result of the unique characteristics of the *claimed invention*") (emphasis added); *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("For objective [evidence of secondary considerations] to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the *claimed invention*.") (emphasis added).

Here, Western Union failed to present any relevant evidence proving a nexus between its commercial success and its claimed invention. The only evidence that Western Union points us to is testimony from one of its employees explaining how the "Money Transfer by Phone" or Yellow Phone system that allowed customers simply to pick up the phone and have a Western Union CSR stage a transaction for them enabled dramatic growth of Western Union's business. However, Western Union does not claim that it invented a formless money transfer system or that systems such as Orlandi Valuta are not prior art to the claimed invention. It cannot therefore claim any commercial success that arose from features of the system found in the prior art as a consideration for nonobviousness of its claimed invention. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent.").

Similarly, Western Union failed to establish that investments made by itself and by MoneyGram in developing formless money transfer systems different from Orlandi Valuta have any relation to the patentable features of the claimed inventions. Western Union points to payments in the amount of $240,000 that MoneyGram made to Cambridge Technology Partners ("Cambridge") for consulting services as proof of such investments.

However, MoneyGram presented evidence at trial that MoneyGram's payments to Cambridge were for consulting services targeted toward reinventing the entire Money-Gram system, only part of which was addressing challenges involved in adopting a formless system. Western Union failed to rebut that testimony, or offer any other evidence that demonstrated that Cambridge's services were dedicated to developing the inventions claimed in the patents in suit. Mere attorney argument that both parties refused to adopt the Orlandi Valuta system specifically because it was lacking the innovative aspects of the claimed inventions is not evidence that can support a finding of nonobviousness. *See Perfect Web*, 587 F.3d at 1332 (rejecting a nonobviousness position that was "merely attorney argument lacking evidentiary support"). Thus, we find that the district court's reliance, in finding nonobviousness, on the amount of time and money that both parties had spent on developing formless systems was misplaced.

Moreover, weak secondary considerations generally do not overcome a strong prima facie case of obviousness. *See Media Techs. Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, (Fed. Cir. 2010), *cert. denied*, 2010 WL 2897876 (Oct. 04, 2010) ("Even if [the patentee] could establish the required nexus, a highly successful product alone would not overcome the strong showing of obviousness."); *Leapfrog Enters.*, 485 F.3d at 1162 (holding that the objective considerations of nonobviousness presented, including substantial evidence of commercial success, praise, and long-felt need, were inadequate to overcome a strong showing of primary considerations that rendered the claims at issue invalid). Here, where the inventions represented no more than "the predictable use of prior art elements according to their established functions," *KSR*, 550 U.S. at 417, the secondary considerations advanced

by Western Union are inadequate to establish nonobviousness as a matter of law.

Thus, we conclude that the asserted claims of the '203, '747, and '309 patents would have been obvious as a matter of law and therefore reverse the district court's denial of JMOL of nonobviousness. In light of our disposition, we do not reach issues of claim construction and infringement.

## CONCLUSION

We have considered Western Union's remaining arguments and do not find them persuasive. Accordingly, the judgment of the district court is

**REVERSED.**

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _____ Date: 2/15/11

2010-1080, -1210

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

THE WESTERN UNION COMPANY,
*Plaintiff-Appellee,*

*v.*

MONEYGRAM PAYMENT SYSTEMS, INC.,
*Defendant-Appellant.*

---

Appeal from the United States District Court for the Western
District of Texas in Case No. 1-07-CV-372, Judge Sam Sparks

---

# AFFIDAVIT OF EMMETT J. MCMAHON IN VERIFICATION OF
# MONEYGRAM PAYMENT SYSTEMS, INC.'S BILL OF COSTS

---

WILLIAM G. McELWAIN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20006
(202) 663-6000

MARTIN R. LUECK
EMMETT J. McMAHON
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LASALLE PLAZA
800 LASALLE AVENUE
MINNEAPOLIS, MN 55402
(612) 349-8500

WILLIAM F. LEE
JOSEPH J. MUELLER
MEGAN BARBERO
SYDENHAM B. ALEXANDER, III
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 STATE STREET
   BOSTON, MA 02109
(617) 526-6000

# AFFIDAVIT

1. I am a partner with the law firm of Robins, Kaplan, Miller & Ciresi LLP, counsel representing MoneyGram Payment Systems, Inc. ("MoneyGram") in the above-captioned matter. I am admitted *pro hac vice* before this Court in this matter.

2. In accordance with 28 U.S.C. § 1924, I submit this affidavit in support of MoneyGram's Bill of Costs pursuant Fed. R. App. P. 39 and the Federal Circuit's Judgment on appeal for this case dated December 7, 2010.

3. Pursuant to Federal Circuit Rule of Practice 39, MoneyGram is entitled to the allowable costs incurred for printing the original of MoneyGram's brief, reply brief and confidential and non-confidential appendices.

4. Pursuant to Federal Circuit Rule of Practice 39, MoneyGram is entitled to the allowable costs incurred for the cover and binding for the copies of MoneyGram's brief, reply brief and confidential and non-confidential appendices.

5. Pursuant to Federal Circuit Rule of Practice 39, MoneyGram is entitled to the allowable costs incurred for copying and collating MoneyGram's brief, reply brief and confidential and non-confidential appendices.

6. The costs identified in paragraphs 3-5 of this Affidavit were necessary for filing, service of opposing counsel, and use by MoneyGram's attorneys on the appeal before the Court.

7. As a duly authorized attorney for MoneyGram who has knowledge of the facts in this case, I declare under the penalty of perjury that the costs identified in MoneyGram's Bill of Costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.

Dated:  December 21, 2010          Respectfully submitted,

*Emmett J. Mc Mahon/dco*

Emmett J. McMahon
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2010, I manually filed with the Clerk of the Court of Appeals For the Federal Circuit an original and three copies of **Defendant-Appellant MoneyGram Payment Systems, Inc's Bill of Costs** and **Affidavit of Emmett J. McMahon in Verification of MoneyGram Payment Systems, Inc's Bill of Costs**. As indicated below, I served a copy of the foregoing Bill of Costs and Affidavit via electronic mail and two copies via U.S. Mail on the following counsel for Plaintiff-Appellee:

> DAVID E. SIPIORA
> IAN L. SAFFER
> AMANDA L. SWAIM
> KEVIN MICHAEL BELL
> TOWNSEND AND TOWNSEND AND CREW LLP
> 1400 Wewatta Street
> Suite 600
> Denver, CO 80202-5556
> (303) 571-4000

*Emmett J. McMahon/dco*

Form 24

**FORM 24.  Bill of Costs**

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment.)

Docket No(s): A: 2010-1080, -1210    Caption: B: The Western Union Company v. MoneyGram Payment Systems, Inc.

The Clerk is requested to tax the following costs against: C: The Western Union Company

| ITEM | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Non-Confidential Appendices | xxxxx | xxxxx | D: | | | |
| Docketing Fee (if paid in this court) | xxxxx | E: | F: | 6.00 | | |
| Table of Designated Materials (original) | G: | H: | | 0.08 | | |
| Table of Compilation of Designated Materials (copying and collating) | xxxxx | E: | | 6.00 | | |
| Brief (original) | G: | xxxxx | | 2.00 | | |
| Brief (cover and binding) | G: | H: | | 0.08 | | |
| Brief (copying and collating) | xxxxx | E: 8 | Included | 6.00 | $48.00 | $48.00 |
| Appendix (original - table of contents) | G: 11 | xxxxx | Included | 2.00 | $22.00 | $22.00 |
| Appendix (covers and binding) | G: 11 | H: 1,110 | Included | 0.08 | $976.80 | $976.80 |
| Appendix (copying and collating) | xxxxx | E: | | 6.00 | | |
| Reply Brief (original) | G: | xxxxx | | 2.00 | | |
| Reply Brief (covers and binding) | G: | H: | | 0.08 | | |
| Reply Brief (copying and collating) | I: | J: | | | | |
| Other (describe): | | | | | | |
| GRAND TOTALS | | | | | $1,026.80 | $1,026.80 |

City/County of _Minneapolis_     District/State of _Minnesota_     ) SS

I, K. _Emmett J. McMullen_ , swear under penalty of perjury that the services for which costs are taxed were necessarily performed. Itemized statements of the costs incurred or invoices are attached. Copies of this bill were served on all parties. The certificate of service is attached.

Signature: _Emmett J. McMullen/dco_     Date: _12/21/10_     Attorney for: L: _MoneyGram_

148

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

FEB 1 2010

JAN HORBALY
CLERK

Form 24

FORM 24.  Bill of Costs

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment.)

Docket No(s): A: 2010-1080, -1210    Caption: B: The Western Union Company, v. MoneyGram Payment Systems, Inc.

The Clerk is requested to tax the following costs against: C: The Western Union Company

| ITEM  Briefs and Confidential Appendices | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Docketing Fee (if paid in this court) | xxxxx | xxxxx | D: | | | |
| Table of Designated Materials (original) | xxxxx | E: | F: | 6.00 | | |
| Table of Compilation of Designated Materials (copying and collating) | G: | H: | | 0.08 | | |
| Brief (original) | xxxxx | E: 81 | N/A | 6.00 | $486.00 | |
| Brief (cover and binding) | G: 16 | xxxxx | N/A | 2.00 | $32.00 | |
| Brief (copying and collating) | G: 16 | H: 213 | $730.95 | 0.08 | $272.64 | |
| Appendix (original - table of contents) | xxxxx | E: 8 | Included | 6.00 | $48.00 | |
| Appendix (covers and binding) | G: 16 | xxxxx | Included | 2.00 | $32.00 | |
| Appendix (copying and collating) | G: 16 | H: 1,142 | Included | 0.08 | $1,461.76 | |
| Reply Brief (original) | xxxxx | E: 44 | N/A | 6.00 | $264.00 | |
| Reply Brief (covers and binding) | G: 16 | xxxxx | N/A | 2.00 | $32.00 | |
| Reply Brief (copying and collating) | G: 16 | H: 44 | $153.75 | 0.08 | $56.32 | |
| Other (describe): | I: | J: | | | | |
| GRAND TOTALS | | | | | $2,684.72 | |

City/County of _Minneapolis_    District/State of _Minnesota_    ) SS

I, K: _Emmett J. McMahon_ , swear under penalty of perjury that the services for which costs are taxed were necessarily performed.  Itemized statements of the costs incurred or invoices are attached.  Copies of this bill were served on all parties.  The certificate of service is attached.

Signature: _Emmett J. McMahon /eco_  Date: _12/31/10_    Attorney for: L: _Money Gram_

148

09/14/2010  11:14    6123378053    B    PAGE  01/01

**REMIT TO:**
BACHMAN PRINTING
510 MARQUETTE AVE., STE. 222
MINNEAPOLIS, MN 55402



# INVOICE

Fed. Tax I.D.# 41-1847-471

No. **44245**

Date  5/18/10

Customer P.O. No.
Sandy O

CUSTOMER

*Attn: Accts Payable*  *Sandy Ottley – 24*
Robins Kaplan  ***934
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis MN  55402-2015

| QUANTITY | DESCRIPTION | AMOUNT |
|---|---|---|
| 58 | 18 copies of the Confidential Joint Appendix, vols I & II, and 11 copies of the Non-Confidential Joint Appendix, vols I & II. Western Union v. Moneygram Payment. Copy, collate, perfectbind, cut and trim. | 3,755.80 |

Please help for:
- Mailing address
- Name of client
- File was closed
- Detail invoice
- # Approval
- # Completed file number
- File number not found
- Federal Tax I.D. #
- Disbursement code
- Summary cover sheet

Thank you very much HOC-ACCT. X8254

Date  9 / 14 / 10

**APPROVAL**
Printed Name  *Dennis H McMahon*
Signature  *(signature)*
Timekeeper #  00461
Date  9/14/10
File Number  029408 - 0025
Disbursement Code
G/L Number  36
Amount to Pay $  4,047.81

Taken by: KRISTI

TERMS: NET 30. Invoices past due will be subject to a finance charge of 1.5% per month.

*Please Pay ~*

THANK YOU. Your business is appreciated!

*9-14-10 —*
*8-12-10*
*339-4181 – 7-22-10*

| | |
|---|---|
| SUB | 3,755.80 |
| TAX | 292.01 |
| SHIPPING | |
| TOTAL | 4,047.81 |

510 Marquette Avenue ■ 222 on the Skyway ※ Minneapolis, MN 55402
phone (612) 339-9518 ■ fax (612) 337-8053 ■ (800) 715-3582
www.bachmanprint.com

| Date | | Name | | Qty | Rate | Amount | Description | Ref |
|---|---|---|---|---|---|---|---|---|
| 03/31/10 | | Invoice=2064857 | | 13 | 0 | - | BOS - FOR 15-FEB-2010 - 13 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 16 | 0.15 | 2.40 | DOCUMENT PRINTING | 40882239 |
| 03/31/10 | | Invoice=2064857 | | 16 | 0 | - | BOS - FOR 15-FEB-2010 - 16 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 15 | 0.15 | 2.25 | DOCUMENT PRINTING | 40882240 |
| 03/31/10 | | Invoice=2064857 | | 15 | 0 | - | BOS - FOR 15-FEB-2010 - 15 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 25 | 0.15 | 3.75 | DOCUMENT PRINTING | 40882241 |
| 03/31/10 | | Invoice=2064857 | | 25 | 0 | - | BOS - FOR 15-FEB-2010 - 25 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 45 | 0.15 | 6.75 | DOCUMENT PRINTING | 40882242 |
| 03/31/10 | | Invoice=2064857 | | 45 | 0 | - | BOS - FOR 15-FEB-2010 - 45 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 25 | 0.15 | 3.75 | DOCUMENT PRINTING | 40882243 |
| 03/31/10 | | Invoice=2064857 | | 25 | 0 | - | BOS - FOR 15-FEB-2010 - 25 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 42 | 0.15 | 6.30 | DOCUMENT PRINTING | 40882244 |
| 03/31/10 | | Invoice=2064857 | | 42 | 0 | - | BOS - FOR 15-FEB-2010 - 42 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 10 | 0.15 | 1.50 | DOCUMENT PRINTING | 40882245 |
| 03/31/10 | | Invoice=2064857 | | 10 | 0 | - | BOS - FOR 15-FEB-2010 - 10 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 8 | 0.15 | 1.20 | DOCUMENT PRINTING | 40882246 |
| 03/31/10 | | Invoice=2064857 | | 8 | 0 | - | BOS - FOR 15-FEB-2010 - 8 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 5 | 0.15 | 0.75 | DOCUMENT PRINTING | 40882247 |
| 03/31/10 | | Invoice=2064857 | | 5 | 0 | - | BOS - FOR 15-FEB-2010 - 5 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 13 | 0.15 | 1.95 | DOCUMENT PRINTING | 40882248 |
| 03/31/10 | | Invoice=2064857 | | 13 | 0 | - | BOS - FOR 15-FEB-2010 - 13 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 10 | 0.15 | 1.50 | DOCUMENT PRINTING | 40882249 |
| 03/31/10 | | Invoice=2064857 | | 10 | 0 | - | BOS - FOR 15-FEB-2010 - 10 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 42 | 0.15 | 6.30 | DOCUMENT PRINTING | 40882250 |
| 03/31/10 | | Invoice=2064857 | | 42 | 0 | - | BOS - FOR 15-FEB-2010 - 42 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 14 | 0.15 | 2.10 | DOCUMENT PRINTING | 40882251 |
| 03/31/10 | | Invoice=2064857 | | 14 | 0 | - | BOS - FOR 15-FEB-2010 - 14 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 19 | 0.15 | 2.85 | DOCUMENT PRINTING | 40882252 |
| 03/31/10 | | Invoice=2064857 | | 19 | 0 | - | BOS - FOR 15-FEB-2010 - 19 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 75 | 0.15 | 11.25 | DOCUMENT PRINTING | 40882253 |
| 03/31/10 | | Invoice=2064857 | | 75 | 0 | - | BOS - FOR 15-FEB-2010 - 75 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 78 | 0.15 | 11.70 | DOCUMENT PRINTING | 40882254 |
| 03/31/10 | | Invoice=2064857 | | 78 | 0 | - | BOS - FOR 15-FEB-2010 - 78 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 78 | 0.15 | 11.70 | DOCUMENT PRINTING | 40882255 |
| 03/31/10 | | Invoice=2064857 | | 78 | 0 | - | DC - FOR 15-FEB-2010 78 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 4 | 0.15 | 0.60 | DOCUMENT PRINTING | 40882256 |
| 03/31/10 | | Invoice=2064857 | | 4 | 0 | - | DC - FOR 15-FEB-2010 - 4 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 4 | 0.15 | 0.60 | DOCUMENT PRINTING | 40882257 |
| 03/31/10 | | Invoice=2064857 | | 4 | 0 | - | DC - FOR 15-FEB-2010 - 4 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 75 | 0.15 | 11.25 | DOCUMENT PRINTING | 40882258 |
| 03/31/10 | | Invoice=2064857 | | 75 | 0 | - | DC - FOR 15-FEB-2010 - 75 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 5 | 0.15 | 0.75 | DOCUMENT PRINTING | 40882259 |
| 03/31/10 | | Invoice=2064857 | | 5 | 0 | - | DC - FOR 15-FEB-2010 - 5 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 5 | 0.15 | 0.75 | DOCUMENT PRINTING | 40882260 |
| 03/31/10 | | Invoice=2064857 | | 5 | 0 | - | DC - FOR 15-FEB-2010 - 5 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PRTS | 5 | 0.15 | 0.75 | DOCUMENT PRINTING | 40882261 |
| 03/31/10 | | Invoice=2064857 | | 5 | 0 | - | DC - FOR 15-FEB-2010 - 5 PAGE(S) - 08337 | |
| 02/15/10 | 20833 | Joseph Mueller | PHOS | 3 | 0.15 | 0.45 | PHOTOCOPY | 40896747 |
| 03/31/10 | | Invoice=2064857 | | 3 | 0 | - | BOS - FOR 15-FEB-2010 - 3 PAGE(S) - 04890 | |
| 02/15/10 | 20833 | Joseph Mueller | RESLS | 1 | 3 | 3.00 | COMPUTERIZED RESEARCH | 40932590 |
| 03/31/10 | | Invoice=2064857 | | 1 | 3 | 3.00 | LEXIS - DC - 08337 GASPAROTT, LISA (2/15/2010) | |
| 02/15/10 | 20833 | Joseph Mueller | RESLS | 1 | 117 | 117.00 | COMPUTERIZED RESEARCH | 40932591 |
| 03/31/10 | | Invoice=2064857 | | 1 | 117 | 117.00 | LEXIS - DC - 08337 GASPAROTT, LISA (2/15/2010) | |
| 02/15/10 | 20833 | Joseph Mueller | RESWS | 1 | 789 | 789.00 | COMPUTERIZED RESEARCH | 40984950 |
| 03/31/10 | | Invoice=2064857 | | 1 | 789 | 789.00 | WESTLAW - BOS - ALEXANDER,SANDY (2/15/2010) | |
| 02/15/10 | 20833 | Joseph Mueller | RESWS | 1 | 344 | 344.00 | COMPUTERIZED RESEARCH | 40984951 |
| 03/31/10 | | Invoice=2064857 | | 1 | 344 | 344.00 | WESTLAW - DC - GASPAROTT,LISA (2/15/2010) | |
| 02/16/10 | 20833 | Joseph Mueller | PHOS | 4873 | 0.15 | 730.95 | PHOTOCOPY | 40897225 |
| 03/31/10 | | Invoice=2064857 | | 4873 | 0 | - | DC - FOR 16-FEB-2010 - 4873 PAGE(S) - 07253 | |
| 02/16/10 | 20833 | Joseph Mueller | PRTS | 75 | 0.15 | 11.25 | DOCUMENT PRINTING | 40948989 |
| 03/31/10 | | Invoice=2064857 | | 75 | 0 | - | BOS - FOR 16-FEB-2010 - 75 PAGE(S) - 20833 | |

| Date | Matter | Code | Qty | Rate | Amount | Description | ID |
|------|--------|------|-----|------|--------|-------------|-----|
| 04/22/10 | 20833 Joseph Mueller | PRTS | 43 | 0.15 | 6.45 | DOCUMENT PRINTING | 41479804 |
| 06/30/10 | Invoice=2078032 | | 43 | 0 | - | - BOS - FOR 22-APR-2010 - 43 PAGE(S) - 04890 | |
| 04/22/10 | 20833 Joseph Mueller | PRTS | 44 | 0.15 | 6.60 | DOCUMENT PRINTING | 41479805 |
| 06/30/10 | Invoice=2078032 | | 44 | 0 | - | - DC - FOR 22-APR-2010 - 44 PAGE(S) - 08337 | |
| 04/22/10 | 20833 Joseph Mueller | PRTS | 44 | 0.15 | 6.60 | DOCUMENT PRINTING | 41479806 |
| 06/30/10 | Invoice=2078032 | | 44 | 0 | - | - DC - FOR 22-APR-2010 - 44 PAGE(S) - 08007 | |
| 04/22/10 | 20833 Joseph Mueller | PRTS | 44 | 0.15 | 6.60 | DOCUMENT PRINTING | 41479807 |
| 06/30/10 | Invoice=2078032 | | 44 | 0 | - | - DC - FOR 22-APR-2010 - 44 PAGE(S) - 08007 | |
| 04/22/10 | 20833 Joseph Mueller | PRTS | 1 | 0.15 | 0.15 | DOCUMENT PRINTING | 41479808 |
| 06/30/10 | Invoice=2078032 | | 1 | 0 | - | - DC - FOR 22-APR-2010 - 1 PAGE(S) - 08007 | |
| 04/22/10 | 20833 Joseph Mueller | PRTS | 1 | 0.15 | 0.15 | DOCUMENT PRINTING | 41479809 |
| 06/30/10 | Invoice=2078032 | | 1 | 0 | - | - DC - FOR 22-APR-2010 - 1 PAGE(S) - 08007 | |
| 04/22/10 | 20833 Joseph Mueller | PHOS | 1025 | 0.15 | 153.75 | PHOTOCOPY | 41485816 |
| 06/30/10 | Invoice=2078032 | | 1025 | 0 | - | - DC - FOR 22-APR-2010 - 1025 PAGE(S) - 08337 | |
| 04/22/10 | 20833 Joseph Mueller | PHOS | 28 | 0.15 | 4.20 | PHOTOCOPY | 41485816 |
| 06/30/10 | Invoice=2078032 | | 28 | 0 | - | - DC - FOR 22-APR-2010 - 28 PAGE(S) - 08337 | |
| 04/22/10 | 20833 Joseph Mueller | RESLS | 1 | 37 | 37.00 | COMPUTERIZED RESEARCH | 41502553 |
| 06/30/10 | Invoice=2078032 | | 1 | 37 | 37.00 | LEXIS - BOS - BARBERO, MEGAN (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | RESLS | 1 | 37 | 37.00 | COMPUTERIZED RESEARCH | 41502554 |
| 06/30/10 | Invoice=2078032 | | 1 | 37 | 37.00 | LEXIS - DC - 07253 DAVIS, RUSSELL (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | RESLS | 1 | 84 | 84.00 | COMPUTERIZED RESEARCH | 41502555 |
| 06/30/10 | Invoice=2078032 | | 1 | 84 | 84.00 | LEXIS - DC - 07253 DAVIS, RUSSELL (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | RESWS | 1 | 57 | 57.00 | COMPUTERIZED RESEARCH | 41520794 |
| 06/30/10 | Invoice=2078032 | | 1 | 57 | 57.00 | WESTLAW - BOS - ALEXANDER, SANDY (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | RESWS | 1 | 69 | 69.00 | COMPUTERIZED RESEARCH | 41520795 |
| 06/30/10 | Invoice=2078032 | | 1 | 69 | 69.00 | WESTLAW - BOS - BARBERO, MEGAN (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | RESWS | 1 | 286 | 286.00 | COMPUTERIZED RESEARCH | 41520796 |
| 06/30/10 | Invoice=2078032 | | 1 | 286 | 286.00 | WESTLAW - DC - DAVIS, RUSSELL (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | TELS | 1 | 2.41 | 2.41 | TELEPHONE | 41521379 |
| 06/30/10 | Invoice=2078032 | | 1 | 0 | - | #NAME? | |
| | | | | | | MUELLER: 2 PARTICIPANTS; 17 MIN. (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | TELS | 1 | 2.41 | 2.41 | TELEPHONE | 41521380 |
| 06/30/10 | Invoice=2078032 | | 1 | 0 | - | #NAME? | |
| | | | | | | MUELLER: 2 PARTICIPANTS; 17 MIN. (4/22/2010) | |
| 04/22/10 | 20833 Joseph Mueller | FEDXH | 1 | 19.1 | 19.10 | FEDERAL EXPRESS | 41576711 |
| 06/30/10 | Invoice=2078032 | | 1 | 19.1 | 19.10 | INV#706809992 799449109670 RUSSELL DAVIS TO | |
| | | | | | | TOWNSEND AND TOWNSEND AND CREW DAVID E. | |
| | | | | | | SIPIORA | |
| | | | | | | / IAN L. SAFF DENVER CO | |
| | Voucher=468476 Paid | | | | | Vendor=Federal Express Corp Balance= .00 Amount=2986.03 | |
| | | | | | | Paid: 493138 05/11/2010 | |
| 04/23/10 | 20833 Joseph Mueller | PRTS | 1 | 0.15 | 0.15 | DOCUMENT PRINTING | 41492247 |
| 06/30/10 | Invoice=2078032 | | 1 | 0 | - | - BOS - FOR 23-APR-2010 - 1 PAGE(S) - 04890 | |
| 04/23/10 | 20833 Joseph Mueller | PRTS | 3 | 0.15 | 0.45 | DOCUMENT PRINTING | 41492248 |
| 06/30/10 | Invoice=2078032 | | 3 | 0 | - | - BOS - FOR 23-APR-2010 - 3 PAGE(S) - 04890 | |
| 04/23/10 | 20833 Joseph Mueller | PRTS | 11 | 0.15 | 1.65 | DOCUMENT PRINTING | 41492249 |
| 06/30/10 | Invoice=2078032 | | 11 | 0 | - | - DC - FOR 23-APR-2010 - 11 PAGE(S) - 08337 | |
| 04/23/10 | 20833 Joseph Mueller | PRTS | 3 | 0.15 | 0.45 | DOCUMENT PRINTING | 41492250 |
| 06/30/10 | Invoice=2078032 | | 3 | 0 | - | - DC - FOR 23-APR-2010 - 3 PAGE(S) - 08337 | |
| 04/23/10 | 20833 Joseph Mueller | PRTS | 2 | 0.15 | 0.30 | DOCUMENT PRINTING | 41492251 |
| 06/30/10 | Invoice=2078032 | | 2 | 0 | - | - DC - FOR 23-APR-2010 - 2 PAGE(S) - 08337 | |
| 04/23/10 | 20833 Joseph Mueller | PRTS | 2 | 0.15 | 0.30 | DOCUMENT PRINTING | 41492252 |
| 06/30/10 | Invoice=2078032 | | 2 | 0 | - | - DC - FOR 23-APR-2010 - 2 PAGE(S) - 08337 | |
| 04/26/10 | 20833 Joseph Mueller | PRTS | 3 | 0.15 | 0.45 | DOCUMENT PRINTING | 41501664 |
| 06/30/10 | Invoice=2078032 | | 3 | 0 | - | - DC - FOR 26-APR-2010 - 3 PAGE(S) - 08337 | |
| 05/04/10 | 20833 Joseph Mueller | PHOOS | 1 | 26 | 26.00 | PHOTOCOPY OTHER | 41594371 |
| 06/30/10 | Invoice=2078032 | | 1 | 26 | 26.00 | - DC - FOR 04-MAY-2010 - 08337 BINDING BINDER | |
| | | | | | | 4 CHARGED ON 22-APR-2010 | |
| 05/04/10 | 20833 Joseph Mueller | PRTS | 10 | 0.15 | 1.50 | DOCUMENT PRINTING | 41601526 |
| 06/30/10 | Invoice=2078032 | | 10 | 0 | - | - DC - FOR 04-MAY-2010 - 10 PAGE(S) - 08337 | |
| 05/06/10 | 20833 Joseph Mueller | PRTS | 4 | 0.15 | 0.60 | DOCUMENT PRINTING | 41622511 |
| 06/30/10 | Invoice=2078032 | | 4 | 0 | - | - BOS - FOR 06-MAY-2010 - 4 PAGE(S) - 21474 | |